HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
MICHAEL R. FLEMING (SBN: 322356)
mfleming@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiff Krypt, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **KRYPT, INC.,** a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>**ROPAAR LLC,** a Texas limited liability corporation; **CLAY ROBINSON,** an individual,<br><br>Defendants. | Case Number: 5:19-cv-03226-BLF<br><br>**PLAINTIFF KRYPT, INC.'S OPPOSITION TO DEFENDANT CLAY ROBINSON'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6)**<br><br>Date: January 23, 2020<br>Time: 9:00 a.m.<br>Judge: Hon. Beth Labson Freeman<br>Courtroom: 3 |



# TABLE OF CONTENTS


I. INTRODUCTION ........................................ 1

II. RELEVANT FACTS ........................................ 2

III. LEGAL STANDARD ........................................ 6

IV. ARGUMENT ........................................ 6

A. Krypt Sufficiently Pleads That Robinson Misappropriated its Confidential Information by Acquiring it Through Improper Means ........................................ 7

B. Krypt Sufficiently Pleads that Robinson Misappropriated its Confidential Information by Disclosing it to Ropaar. ........................................ 10

C. Krypt's Breach of Contract Claim Against Robinson is Well Pled ........................................ 11

V. IN THE ALTERNATIVE, KRYPT RESPECTFULLY REQUESTS LEAVE TO AMEND ITS COMPLAINT ........................................ 12

VI. CONCLUSION ........................................ 13




## TABLE OF AUTHORITIES

**Cases**

*Alta Devices, Inc. v. LG Elecs., Inc.*,
343 F. Supp. 3d 868 (N.D. Cal. 2018) .......... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Bombardier Inc. v. Mitsubishi Aircraft Corporation, et al*,
383 F.Supp.3d 1169 (W.D. Wash. 2019) .......... 8, 9

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) .......... 6

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) .......... 12

*JustMed, Inc. v. Byce*,
600 F.3d 1118 (9th Cir. 2010) .......... 7, 8

*Latona v. Aetna U.S. Healthcare Inc.*,
82 F. Supp. 2d 1089 (C.D. Cal. 1999) .......... 12

*Retirement Group v. Galanate*,
176 Cal.App.4th 1226 (Cal. Ct. App. 2009) .......... 12

*Rosenberg Brothers & Co. v. Arnold*,
283 F.2d 406 (9th Cir. 1960) .......... 13

*United States v. Webb*,
655 F.2d 977 (9th Cir. 1981) .......... 13

*Weber v. Dep't of Veterans Affairs*,
521 F.3d 1061 (9th Cir. 2008) .......... 6

**Statutes**

18 U.S.C. § 1831 .......... 1, 6

18 U.S.C. § 1839 .......... 7, 10, 11



Cal. Civ. Code § 3426 .......... 1, 6, 7

**Rules**

Fed. R. Civ. Proc. 15 .......... 13



## I. INTRODUCTION

Defendant Clay Robinson ("Robinson") moves to dismiss Plaintiff Krypt LLC's (Plaintiff" or "Krypt") theft of trade secret claims against him, arguing that Krypt fails to state a claim that Robinson misappropriated any trade secrets. Robinson also moves to dismiss Krypt's breach of contract claim, arguing that Krypt fails to allege a concrete harm for which recovery is permissible. Robinson's legal analysis is deeply flawed, and relies on an intentional ignorance of the Complaint's factual allegations.

Krypt alleges that in connection with Ropaar Inc.'s ("Ropaar") poaching of Krypt's then high-level employee, Clay Robinson, Ropaar and Robinson conspired to surreptitiously download and transfer Krypt's trade secrets to Ropaar, during the final days of Robinson's employment with Krypt. Krypt has alleged, and has evidence showing, that Robinson used his Krypt-issued laptop to download Krypt's trade secrets and then surreptitiously upload that proprietary information onto his personal, cloud-based storage account, without Krypt's knowledge or approval. As discussed below, Krypt has amply satisfied its burden under Rule 12 of demonstrating that Robinson misappropriated Krypt's trade secrets by a) acquiring them through improper means, and/or b) disclosing them to RoPaar.

Concerning the breach of contract claim, Robinson does not challenge any element other than damages. Cognizable damages are clearly pled in the Complaint, which alleges that Krypt has suffered and continues to suffer substantial harm by virtue of the loss of exclusive use and possession of its Confidential Information. This category of damages is expressly recognized in the parties' Confidential Information and Invention Assignment Agreement, which Robinson signed and agreed to be bound by.

For the reasons discussed herein, Krypt respectfully submits that it has satisfied its burden at the Rule 12 stage as to its First and Second Causes of Action for violations of Federal Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*. ("DTSA") and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* ("CUTSA"), and its Third Cause of Action for breach of contract. Krypt has clearly pled sufficient facts to allow the Court to draw the reasonable inference that Robinson is liable for misappropriation of trade secrets and breach of contract, where all of Krypt's allegations are taken

as true, as they must be at this stage. In the alternative, Krypt respectfully requests that the Court grant Krypt leave to amend its Complaint, including in light of information that Krypt has recently learned, indicating that Robinson has directly contacted Krypt's clients in his capacity as a Ropaar employee, in a further attempt to illegally compete with Krypt. This new information lends additional (though unnecessary) support to Krypt's belief that Robinson and Ropaar are conspiring to illegally compete with Krypt, including by using its trade secrets, causing substantial damages.

## II. RELEVANT FACTS

### Krypt's Invaluable Trade Secrets Fuels Its Rapid Growth

Established in 2008, Krypt is a leading global business and systems consulting firm, which provides System Applications Products ("SAP") solutions for small and large corporations. Compl., ¶16. Krypt has niche practices which have been developed after years of experience and knowledge in Global Trade and Supply Chain areas. Compl., ¶16. Krypt regularly competes for and wins projects against some of the biggest names in the IT consulting world because of its specialization, knowledge base, trade secrets, intellectual property, and credibility, all of which has been painstakingly developed over many years of focused effort. Compl., ¶16. Krypt offers solutions that include consulting services, pre-developed products, and specialized methodologies, all of which are based upon and/or contain numerous trade secrets, and these services represent the key value that Krypt provides to its clients. Compl., ¶16.

Beginning in approximately 2012, Krypt began to experience rapid growth. Compl., ¶19. A key reason for Krypt's explosive growth has been Krypt's development and acquisition of confidential and proprietary information and trade secrets, which it uses daily in its normal course of business (the "Confidential Information").[1] Compl., ¶20. Given their extreme value to the company, Krypt fastidiously protects and maintains the confidentiality of its Confidential Information. Compl.,

[1] Confidential Information includes, but is not limited to: solutions for complex customer requirements; confidential client lists which contain the identity of, and key contact information for, Krypt's clients and prospective clients; customer requirements; Krypt's proprietary strategy for each client; detailed fee structures; key add-on programs derived from investments in research and development, including Krypt Visibility and Krypt Connect, which Krypt uses as key differentiators and value-adds for its clients; special practices, methods, and collateral built over years of experience with specialist work; and other proprietary information regarding services performed for actual and prospective clients. Compl., ¶20.

¶¶ 22-24.

To scale its business following its rapid growth, Krypt began to invest heavily in recruitment and hiring of senior employees. Compl., ¶26. These senior employees were given extensive training and, in time, worked closely to develop and utilize Krypt's trade secrets. Compl., ¶26. These employees regularly attended high-level strategy meetings internal to Krypt, and were provided with access to Krypt's Confidential Information. Compl., ¶27. Among these senior employees was Defendant Clay Robinson, who worked for Krypt for almost three years, from May 1, 2016, to February 12, 2019. Compl., ¶32.

During his employment, Robinson served as Krypt's Global Trade Pre-Sales engineer, and as one of Krypt's spokespersons at the various industry conferences Krypt attended. Compl., ¶32. In this role, Robinson was included in key decisions such as strategic partnerships, product planning, competitive strategy, and sales. Compl., ¶32. During his employment, Robinson was entrusted with full access to Krypt's Confidential Information, including but not limited to information about Krypt's strategy and expansion plans, as well as customer lists concerning clients and prospective clients, including key contact information, complex customer requirements and solutions, client preferences, past services rendered to the client, detailed fee structures, confidential proposals, and pipeline information. Compl., ¶38.

In connection with his employment, Robinson signed several valid and binding agreements with Krypt, including an Offer Letter and a Confidential Information and Invention Assignment Agreement. Compl., ¶33, Exhs. A and B. Pursuant to these contracts, Robinson expressly consented to personal jurisdiction in the United States District Courts for the State of California; agreed that California law would govern any disputes between him and Krypt; agreed not to use any Confidential Information to compete with Krypt. Complaint, ¶34.

**Ropaar Attempts to Stifle the Competition By**

**Misappropriating Krypt's Trade Secrets and Poaching Krypt Employees**

Ropaar's CEO, Jitendra Singh, started Ropaar after Krypt rejected his offer to come on board as a Krypt employee in exchange for a substantial ownership share of Krypt. Compl., ¶3-4. Subsequently, Mr. Singh started Ropaar, which operates in the same space as Krypt and is a direct

industry competitor of Krypt. Compl., ¶2-3.

Following Krypt's explosive success, Ropaar began poaching key employees from Krypt, including the senior employees Krypt had hired, extensively trained, and provided with access to its Confidential Information. Compl., ¶28. Ropaar concedes that it hired "several of Plaintiffs' former employees" (ECF No. 5, p.5 Motion, p. 5), and does not deny that over half of Ropaar's employees have been recruited directly from Krypt. Complaint, ¶¶ 28-31.[2]

Krypt has recently learned that Ropaar's long-standing poaching activities have not merely been the product of routine competition, but rather are in violation of state and federal laws governing trade secret theft and other unfair business practices. This was discovered in connection with the abrupt departure of Defendant Robinson under suspect circumstances. As alleged in the Complaint: on January 29, 2019, Robinson resigned his employment, to be effective February 12, 2019. Compl., ¶32. Robinson told Krypt management that a member of his family had health problems, that he would be leaving the SAP industry entirely, and that he would begin working for Smithfield Foods, which is a packaged goods and protein company. Compl., ¶43.

On February 12, 2019, Robinson signed a Termination Certification, in which he confirmed that he did not have, retain, or store any of Krypt's Confidential Information, and that he would preserve the confidentiality of those materials. Compl., ¶44. These attestations by Robinson (and all departing Krypt employees) are critically important to Krypt, as Krypt's success in the industry depends heavily on maintaining the confidentiality of its Confidential Information. Compl., ¶¶ 39-40.

Two months later, Krypt learned that Robinson had not left the SAP industry, but in fact was working for its direct competitor, Ropaar. Compl., ¶48. Krypt was initially mystified about why Robinson would create such an elaborate pretext for his resignation, and became suspicious that Robinson had conspired with Ropaar to take Krypt's Confidential Information with him to Ropaar. Compl., ¶49. Based on these suspicions, Krypt retained a third party computer specialist to conduct a computer forensic analysis of Robinson's company laptop. Compl., ¶51.

---

[2] In recognition of employees' rights to seek other employment, Krypt has not sued Ropaar for its rampant asset poaching; rather, these facts establish Ropaar's pattern and practice of exploiting Krypt's efforts in order to gain an edge in the industry, and support the allegation that Ropaar hired Defendant Clay in an effort to illegally obtain Krypt's trade secrets.

Regrettably, the result of the forensic analysis confirmed Krypt's worst fear and indicated that Robinson had been surreptitiously stealing Krypt's Confidential Information in the final days of his employment with Krypt, and *after his employment with Ropaar had already begun*. Compl., ¶¶51-55. The forensic analysis uncovered the following facts:

- prior to his departure, Robinson had reformatted his company laptop through a "Push-Button Reset" on Windows, resulting in the deletion of Robinson's local account on the computer (though the computer specialists were able to recover the majority of the data that Robinson had attempted to delete, as described next);
- on February 5, 2019—seven days before his last day of employment with Krypt—Robinson used his Krypt-issued laptop to log into and access his Ropaar e-mail;
- between his resignation date of January 29, 2019, and his departure date of February 12, 2019, Robinson accessed a number of files containing Krypt's Confidential Information and downloaded it to his Krypt company laptop;
- Robinson uploaded a number of files containing Confidential Information to non-Krypt cloud accounts at DropBox, OneDrive, and/or to a USB flash drive;[3]
- Robinson uploaded "Desktop.7z," a complete copy of his laptop's "desktop," to some unknown form of storage.

Compl., ¶¶50-55.

Suffice it to say, Krypt was alarmed and deeply concerned by this evidence indicating that Robinson had used his final days with Krypt to surreptitiously compile Krypt's Confidential Information and trade secrets, and to communicate that information to Ropaar. This discovery was particularly concerning in light of Ropaar's long history of poaching Krypt's high-level employees, with whom access to Confidential Information had been shared.[4] Compl., ¶¶29-31. Based on these facts, as alleged in more detail in the Complaint, Krypt filed the instant Complaint alleging that

---

[3] Krypt does not maintain any company accounts with DropBox or OneDrive. Compl., ¶53.

[4] Based on the facts currently known, it is reasonable to believe that Ropaar has conspired with other former-Krypt employees that Ropaar has recruited away from Krypt, to similarly misappropriate Krypt's proprietary information. Should discovery uncover such conspiracies, Krypt will amend its Complaint to add additional claims and allegations against one or both Defendants.





Robinson and Krypt worked in concert to misappropriate Krypt's trade secrets to their mutual advantage. Compl., ¶55.

## III. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067-1068 (9th Cir. 2009). To survive a Rule 12(b)(6) challenge, a complaint need only plead "'enough facts to state a claim to relief that is plausible on its face.'" *Id.*, quoting *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). A claim is plausible on its face when the Complaint pleads sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As discussed below, the Complaint properly pleads the First, Second, and Third Causes of Action against Robinson because: (1) Krypt sufficiently alleges that Robinson misappropriated its Confidential Information by acquiring it through improper means; (2) Krypt sufficiently alleges that Robinson misappropriated its Confidential Information by disclosing it to RoPaar; and (3) Krypt sufficiently alleges concrete damages against Robinson, which is all that is required at this stage.

## IV. ARGUMENT

Krypt alleges that Robinson has violated the Federal Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*. ("DTSA") and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq*. ("CUTSA"). Pursuant to the DTSA, misappropriation is defined as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
> > (i) used improper means to acquire knowledge of the trade secret;
> >
> > (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
> >
> > > (I) derived from or through a person who had used improper means to acquire the trade secret;





(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that—

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake;

18 U.S.C. § 1839(5).

As Robinson acknowledges, CUTSA's definition of "misappropriation" is nearly identical to DTSA's definition, and any differences are not material to this case. *See* Cal. Civ. Code § 3426.1(b); *See Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018); (Robinson Motion to Dismiss, ECF No. 28, pg. 4).

**A. Krypt Sufficiently Pleads That Robinson Misappropriated its Confidential Information by Acquiring it Through Improper Means**

Krypt's Complaint alleges that in his final days of employment at Krypt, Robinson acquired Krypt's Confidential Information by uploading it to Robinson's personal cloud-based storage accounts, without a legitimate business need or justification. *See* 18 U.S.C. § 1839(5) (stating that misappropriation can be defined as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.") Concurrently, Robinson took intentional steps to conceal the fact that he was leaving to join the competition, RoPaar, much less that he had access to and had logged into his Ropaar e-mail while employed by Krypt.

In Robinson's Motion to Dismiss, he argues that he can't be found to have improperly acquired Krypt's trade secrets because, at one time, he was given access to those materials in connection with carrying out his employment. Robinson relies heavily on *JustMed, Inc. v. Byce* to assert "[w]here an employer voluntarily discloses a trade secret to an employee, that employee has not acquired the trade secret by improper means." 600 F.3d 1118, 1129 (9th Cir. 2010). However, a



cursory examination of the factual situation in *JustMed* reveals that it is wholly indistinguishable from this case.

In *JustMed, Inc. v. Byce,* the dispute concerned a computer program's source code that was exclusively developed by defendant Byce, who had been an employee of JustMed. *Id.* at 1120. JustMed had provided Byce with the company's original source code, and Byce then spent months developing the source code, without any support from employees of JustMed, Inc. or others. *Id.* at 1121-24. After noticing a pay discrepancy, Byce disputed his compensation with JustMed. *Id.* at 1122-23. The parties were unable to come to an agreement, and the pay dispute escalated to a dispute regarding ownership of the source code. *Id.* at 1123. Since Byce believed that the source code rightfully belonged to him, he deleted all copies of the trade secret from JustMed, but did not otherwise download, copy, or upload the source code to any other individuals, corporations, or storage mediums. *Id.* at 1122-23.

Under these facts, the Ninth Circuit held that Byce did not misappropriate a trade secret because he did not "acquire" the source code through any improper means. *Id.* at 1131. In doing so, the Ninth Circuit recognized that Byce had possession of the trade secret because he was the only individual who worked on and developed the source code, and he had not copied or transferred the trade secret to another electronic storage medium or to other individuals. *Id.* at 1131 ("Besides filing for a copyright and threatening to withhold the source code, Byce made no other "use" of the source code.) By stark contrast, Robinson gained possession of Krypt's trade secrets not because he exclusively developed them, but by accessing and downloading them in his final days of employment and saving them to his personal files, while he was contractually bound to maintain their secrecy. Robinson cites footnote 8 in *JustMed* to argue that his conduct of copying Krypt's trade secret information "do[es] not amount to an acquisition of trade secrets by improper means" – yet neither that footnote nor the rest of the *Byce* case holds that copying cannot constitute "acquisition" of trade secrets, particularly under the extreme circumstances at issue here.

This case is on all fours with *Bombardier Inc. v. Mitsubishi Aircraft Corporation, et al*, 383 F.Supp.3d 1169, 1183-1185 (W.D. Wash. 2019). In *Bombardier*, the plaintiff was a leading plane manufacturer who had made significant strides in developing a new type of aircraft to meet multiple

regulatory guidelines. *Id.* at 1174-75. One of the defendants, a rival plane manufacturer, also attempted to develop a similar type of aircraft but encountered numerous issues with its design meeting the necessary regulations. *Id.* at 1174-75. In order to make rapid strides in development, the plane manufacturer defendant hired co-defendant AeroTEC, an engineering firm, and the two defendants began to recruit senior, high-level employees from plaintiff Bombardier. *Id.* at 1174-76. These employees had access to a number of Bombardier's trade secrets, and helped the competition meet the regulations. *Id.* at 1175-76. One former employee that AeroTEC had poached from Bombardier sent two Powerpoint slide decks containing Bombardier's trade secrets, to his personal e-mail, hours before his employment at Bombardier ended and before he was scheduled to begin working at AeroTEC. *Id.* at 1175-76.

Just as Robinson attempts to do in his Motion, defendants in *Bombardier* cited *JustMed, Inc.* and asserted that the plaintiff could not state a claim for trade secret misappropriation against the poached employee because he had been given access to the trade secrets during his employment with Bombardier. *Id.* at 1183-84. In rejecting this argument, the court held that although the poached employee did have permission to access Bombardier's trade secrets in the course of his employment, he did not have permission to send these trade secrets to his personal e-mail account, especially since he was about to terminate his employment with Bombardier. *Id.* at 1183-84. The court placed particular emphasis on the timing of the misappropriation when considering whether the trade secrets were acquired through "improper means" – namely, the poached employee sent the documents to himself on his final day of employment with Bombardier, in recognition of the fact that access to these documents would soon be restricted, and this timing indicated that the poached employee was sending himself Bombardier trade secrets to help his new employer. *Id.* at 1184-85.

Just like in *Bombardier Inc.*, Ropaar intentionally poached high-level employees who had access to Krypt's Confidential Information. Compl. ¶ 25-31, 38. Robinson, one of the poached high-level employees, went to great lengths to conceal the fact that he was leaving Krypt to join the competition when he abruptly resigned. Compl. ¶ 43. Robinson represented that he was leaving the industry entirely in order to care for a sick family member. Compl. ¶ 43. In reality, Robinson was merely trying to obfuscate the fact that he was leaving Krypt to work for Ropaar – and that he



intended to take Krypt's trade secrets with him to illegally compete. Compl. ¶ 76-83. That is precisely what Robinson did, by accessing and downloading Krypt's Confidential Information in the final days of his employment, without any legitimate business justification that would serve Krypt, the owner of the trade secrets. Compl. ¶ 51-55. He then uploaded the Confidential Information to his personal, cloud-based storage accounts and/or a USB flash drive. Compl. ¶ 51-55. Robinson was fully cognizant that his access to Krypt's trade secrets would soon be restricted in light of his imminent departure. Under a motion to dismiss standard, Krypt has amply alleged that Robinson had acquired Krypt's Confidential Information under improper means, as required to establish a claim for trade secret theft.

Robinson's argument does not comport with the language or intent of the DTSA or CUTSA. While Krypt did "voluntarily disclose" its purported trade secrets to Robinson, it did so in the ordinary course of business, based on the understanding that Robinson would act in Krypt's best interest in accessing or using the trade secrets. Krypt did not authorize Robinson to upload its Confidential Information to Robinson's personal cloud-based storage accounts, particularly not in the final day of his employment at Krypt. In addition, Krypt relied on the statements contained in its numerous contracts with Robinson, in which he expressly agreed to maintain the confidentiality of Krypt's Confidential Information, and not to make any unauthorized copies of Krypt's Confidential Information.

Robinson essentially argues that as long as an employee is provided access to a trade secret at any point in their employment, that employee *cannot* be held liable for misappropriating the trade secret, *at any time*, even if the plaintiff can demonstrate that the employee made unauthorized copies for non-business related purposes. This is not what the DTSA or CUTSA states or what it intends. If it did, then it would be nearly impossible for any plaintiff to prevail on a theft of trade secrets claim, particularly with respect to high-level employees. Instead, the DTSA and CUTSA state that when a person acquires a trade secret of another with knowledge of improper means, then that person is guilty of misappropriation. For these reasons, Robinson's motion fails.

### B. Krypt Sufficiently Pleads that Robinson Misappropriated its Confidential Information by Disclosing it to Ropaar.

In addition, Krypt has sufficiently pled misappropriation by Robinson as required by 18 U.S.C. § 1839(5)(B), because Krypt's allegations demonstrate that Robinson disclosed the Confidential

Information to RoPaar without Krypt's express or implied consent, and at the time of disclosure Robinson knew or had reason to know that the Confidential Information was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit use of the trade secret. 18 U.S.C. § 1839(5)(B)(ii)(II).

As set forth in the Complaint, Robinson signed several contracts with Krypt in which he acknowledged his obligation to maintain the secrecy of Krypt's Confidential Information, both throughout his employment and following his termination. Compl. ¶ 33-37. Despite these obligations, and while bound by then, he accessed his Ropaar e-mail address on a Krypt-issued laptop, downloaded Krypt's trade secrets and transferred them to non-Krypt affiliated cloud-based storage accounts, without Krypt's consent. Compl. ¶ 51-52. Based on Krypt's allegations and evidence – including that Robinson accessed his Ropaar e-mail account on his Krypt-issued laptop during his final days of employment, that Robinson had falsely represented that he was leaving the industry entirely, and the forensic report indicating that Robinson had uploaded a number of files containing Krypt's Confidential Information in the final days of Robinson's employment – the reasonable inference can easily be drawn that Robinson has disclosed Krypt's trade secrets to Ropaar. This alleged disclosure independently supports Krypt's trade secret misappropriation claim.

### C. Krypt's Breach of Contract Claim Against Robinson is Well Pled

The Complaint pleads the existence of enforceable obligations, and breaches thereof, by Robinson. Robinson does not challenge any element of the breach claim other than damages, and alleges that Krypt has failed to allege a concrete, non-speculative injury stemming from the breach. This argument ignores Krypt's allegation that it has suffered and continues to suffer substantial harm by virtue of the loss of exclusive use and possession of its Confidential Information. This category of damages is expressly recognized in the parties' Confidential Information and Invention Assignment Agreement ("CIIAA"), which Robinson signed and agreed to be bound by. The CIIAA states:

> It is acknowledged that each failure to uphold this clause will cause the Company to incur substantial economic damages and losses of types and in amounts which are impossible to compute and ascertain with certainty as a basis for recovery by the Company of actual damages, and the liquidated damages of Twenty Five Thousand Dollars ($25,000) represents a fair, reasonable and appropriate

> estimate thereof. Accordingly, in lieu of actual damages, and at the discretion of the Company, I agree that liquidated damages may be assessed and recovered by Company as against me. All liquidated damages are intended to represent estimated actual damages and are not intended as a penalty.[5]

In discovery, Krypt will confirm how many times Robinson has violated Section 8 of the CIIAA, and will then specify the exact amount of liquidated damages which are owed.

Robinson alleges that Krypt's claim of damages is an "impermissible attempt to use the inevitable disclosure doctrine to sidestep § 16600's prohibition against contracts that restrain the movement of employees." (Robinson Motion to Dismiss, Ecf No. 28, pg. 6). This fundamentally misunderstands Krypt's argument. Krypt alleges that Robinson breached the CIIAA by virtue of a) accessing Krypt's Confidential Information without a legitimate business purpose and without Krypt's authorization; b) by making copies of Krypt's Confidential Information and uploading it to various cloud-based storage devices**;** and c) failing to return all of Krypt's Confidential Information upon termination of his employment relationship. All of these are explicit violations of the CIIAA, and none of these contractual obligations restrain the movement of employees; rather, they only restrain the ability of employees, like Robinson, from misappropriating Krypt's trade secrets. *See, e.g.*, *Latona v. Aetna U.S. Healthcare Inc.*, 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999) ("Finding that employment restrictions that "serve to protect a former employer's trade secrets, proprietary information, and confidential information" are valid in California and do not violate section 16600); *Retirement Group v. Galanate*, 176 Cal.App.4th 1226, 1237 (Cal. Ct. App. 2009) (California courts have "consistently held former employees may not misappropriate the former employer's trade secrets to unfairly compete with the former employer.") Since the Complaint sufficiently pleads that Robinson agreed to the liquidated damages provision, a concrete injury has been alleged and this Court should deny Robinson's Motion to Dismiss Krypt's breach of contract claim.

## V. IN THE ALTERNATIVE, KRYPT RESPECTFULLY REQUESTS LEAVE TO AMEND ITS COMPLAINT

In the event the Court is inclined to grant Robinson's Motion, in any part, Krypt respectfully requests that the Court grant leave to Krypt to amend its Complaint pursuant to Rule 15, to allege

---

[5] *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (stating that the court can consider "exhibits attached to the Complaint."

additional facts that Krypt has recently learned to support its First, Second, and Third Causes of Action. As one example, Krypt has recently learned from one of its customers that Robinson has contacted the customer in an attempt to solicit business for RoPaar, stating that Robinson and "a lot of other senior" consultants are leaving Krypt to work for RoPaar. Krypt has also discovered additional information to support its belief that Ropaar continues to poach senior level employees who have had access to Krypt's Confidential Information, for the purpose of using Krypt's trade secrets against it; indeed, since the filing of the Complaint, RoPaar has poached yet another senior employee of Krypt, who had access to Krypt's Confidential Information and who worked closely with Robinson. If necessary, Krypt will amend the Complaint to allege these and other facts against both Robinson and RoPaar. Fed. R. Civ. Proc. 15; *see also United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citing *Rosenberg Brothers & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960)) (stating that Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality.").

## VI. CONCLUSION

For the reasons discussed above, Krypt respectfully requests that this Court deny Robinson's Motion in full. In the alternative, Krypt requests leave to amend its Complaint pursuant to Rule 15.

Respectfully submitted,

Date: October 4, 2019

DHILLON LAW GROUP INC.

By: /s/ Harmeet K. Dhillon

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
KRISTA L. BAUGHMAN (SBN: 264600)
kbaughman@dhillonlaw.com
MICHAEL R. FLEMING (SBN: 322356)
mfleming@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Attorneys for Plaintiff Krypt, Inc.

