**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| KRYPT, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>ROPAAR LLC, et al.,<br><br>        Defendants. | Case No. 19-cv-03226-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF 15] |

Krypt, Inc. ("Krypt") brings this suit against its former employee Clay Robinson ("Robinson") and Ropaar LLC ("Ropaar") in connection with Robinson's decision to leave Krypt's employ and join Ropaar. Ropaar now moves to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that this Court does not have personal jurisdiction over Ropaar. For the reasons discussed below, the motion to dismiss is GRANTED WITH LEAVE TO AMEND.

**I.    BACKGROUND**

Unless otherwise noted, the following factual allegations are drawn from the Complaint, ECF 1 ("Compl.").

Plaintiff Krypt is a California corporation with its principal place of business in San Jose, California. Compl. ¶ 13. It is a "business and systems consulting firm, which provides System Applications Products ('SAP') solutions for small and large corporations." *Id.* ¶ 16. Specifically, Krypt provides "consulting services, pre-developed products, and specialized methodologies" for its customers. *Id.*

Defendant Ropaar is a Texas limited liability corporation with its principal place of

business in Texas.[1]  According to Krypt, Ropaar "also provides SAP solutions for corporations" and thus is "currently a direct competitor of Krypt's." *Id.* ¶ 3, 17.  Ropaar disputes that it is a "direct competitor" of Krypt, however.  In declarations submitted by Jitendra Singh, Ropaar's sole managing member, Ropaar explains that it "is rare for Ropaar to be bidding on the same contracts as Krypt" because Ropaar is much smaller than Krypt and "works in a subset of IT consulting domains that Krypt targets."  ECF 26-1 ("Second Singh Decl.") ¶ 6.  Moreover, with regard to geographic competition, Ropaar represents that it "does not transact any business in California," that it currently "does not have any contracts with California companies," and that its relationship with its only former California customer ended in February 2013.  ECF 15-1 ("First Singh Decl.") ¶¶ 3-4.  Ropaar further asserts that none of Ropaar's employees or contractors are residents of California and that it "does not have any assets or property in California.  *Id.* ¶¶ 3, 5.

Defendant Robinson worked at Krypt from May 1, 2016 to February 12, 2019, Compl. ¶ 32, and now works at Ropaar, *id.* ¶ 48.  Although Krypt is headquartered in California and Ropaar is headquartered in Texas, Robinson was a resident of Washington County, Arkansas "at all times relevant to the Complaint."  *Id.* at 15.

While at Krypt, Robinson served as a Professional Services Consultant.  As a result, Robinson was apparently "entrusted with access to all of Krypt's Confidential Information, including but not limited to information about Krypt's strategy and expansion plans, as well as customer lists concerning clients and prospective clients."  *Id.* ¶ 38.  He also "provided services in California on one or more occasion, including from Krypt's California offices, and including to California-based Krypt clients."  *Id.* ¶ 41.  On January 29, 2019, Robinson resigned from Krypt, explaining that "a member of his family had health problems that limited Robinson's ability to travel."  *Id.* ¶ 43.  Robinson also told Krypt that he "was leaving the SAP industry entirely and would begin working for Smithfield Foods, a meat-packing company."  *Id.*

---

[1] The Complaint identifies Ropaar's principal place of business as McKinney, Texas.  Compl. ¶ 14.  Ropaar now asserts that is incorrect, and that Ropaar's principal place of business is Farmers Branch, Texas.  ECF 15 ("Mot.") at 1.  Ropaar does not provide any evidence to that effect, thus the Court must accept the Complaint's allegation as true.  In any event, the factual dispute does not affect the Court's resolution of the instant motion.

2

On April 4, 2019, however, Krypt learned that Robinson had not left Krypt to join Smithfield Foods but had instead began working for Ropaar. *Id.* ¶ 48. Following that revelation, Krypt conducted a forensic examination of Robinson's company-issued laptop. *Id.* ¶ 49. At the outset, Krypt found that Robinson had deleted his local account on the computer prior to his departure. *Id.* ¶ 50. Nevertheless, the forensic examination was able to discover "that on February 5, 2019—seven days before his last day of employment with Krypt—Robinson used his Krypt-issued laptop to log into and access his Ropaar email." *Id.* ¶ 51. The forensic examination also suggested that, between January 29, 2019 and February 12, 2019, Robinson "accessed a number of files containing Krypt's Confidential Information" and uploaded a "substantial amount" of that information "to non-Krypt cloud accounts at DropBox, OneDrive, and/or to a USB flash drive." *Id.* ¶ 52. Finally, the forensic examination "show[ed] that Robinson uploaded . . . a complete copy of his laptop's 'desktop' to some unknown form of storage." *Id.* ¶ 54.

Meanwhile, Krypt believed that Ropaar had "launched a campaign to poach Krypt's employees . . . after they had been trained by Krypt and given access to Krypt's invaluable Confidential Information." *Id.* ¶ 28. For example, Ropaar purportedly made an employment offer to Rajesh Malle in May 2015, which Malle ultimately accepted. Krypt alleges that at least four of Ropaar's seven employees were recruited directly from Krypt. *Id.* ¶ 31.

Based on the forensic examination of Robinson's computer and Krypt's belief that Ropaar has been systematically poaching Krypt employees, Krypt now alleges that "Ropaar and Robinson have been acting in concert to design and execute a plan to obtain and misappropriate Krypt's Confidential Information." *Id.* ¶ 55.

Accordingly, on June 7, 2019, Krypt filed a complaint against Robinson and Ropaar. *See* ECF 1. The Complaint contains three claims: (1) a claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, against both Defendants; (2) a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.*, against both Defendants; and (3) a common law breach of contract claim against Robinson. *Id.* ¶¶ 56-83. The breach of contract claim—which is not at issue in the instant motion—is based upon Robinson's alleged breach of two agreements he signed upon

3

accepting the position at Krypt: an offer letter (the "Offer Letter") and a Confidential Information and Invention Assignment Agreement (the "CIIAA"). *See id.* ¶¶ 33, 78, 81.

On August 9, 2019, Ropaar moved to dismiss the two claims against it for lack of personal jurisdiction. ECF 15 ("Mot."). The motion has been fully briefed, ECF 24 and 26, and the Court heard oral argument on December 5, 2019, ECF 37.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). Courts may consider evidence presented in affidavits and declarations in determining personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted).

"Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). If, however, the defendant adduces evidence controverting the allegations, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction," *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986), for a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Moreover, conclusory allegations or "formulaic recitation of the elements" of a claim are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "Nor is the court required to accept as true allegations that are . . . unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

"When no federal statute governs personal jurisdiction, the district court applies the law of

the forum state." *Id.; see* Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Cal. Civ. Proc. Code Ann. § 410.10). Constitutional due process, in turn, requires that a defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Freestream Aircraft*, 905 F.3d at 602 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068 (citing *Daimler AG*, 571 U.S. at 127). General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (internal quotation marks omitted). Where a defendant is subject to general jurisdiction, it may be sued "on any and all claims," *id.* at 137, including claims "arising from dealings entirely distinct" from its forum-related activities, *id.* at 127 (internal quotation marks omitted). By contrast, specific jurisdiction is proper when the defendant's contacts with the forum state are may be more limited but the plaintiff's claims "arise out of or relate to" those contacts. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1786 (2017).

**III. DISCUSSION**

As noted above, Defendant Ropaar moves to dismiss the two claims against it for lack of personal jurisdiction. *See* Mot. at 1. In opposition to Ropaar's motion, Plaintiff Krypt does not assert that the allegations in the Complaint support the exercise of general jurisdiction. *See* ECF 24 ("Opp.") at 1. Accordingly, Krypt's claims against Ropaar can survive dismissal only if Krypt demonstrates that specific jurisdiction is proper. *See Freestream Aircraft*, 905 F.3d at 602.

The Ninth Circuit has set forth a three-prong test for the exercise of specific jurisdiction:

(1) the defendant must either "purposefully direct his activities"

5

> toward the forum or "purposefully avail himself of the privileges of conducting activities in the forum";
> (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and
> (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

With respect to the first prong, the Ninth Circuit has said that "purposeful availment" and "purposeful direction" are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802 (acknowledging that the Ninth Circuit has sometimes "use[d] the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction"). Because the trade secret misappropriation claims against Ropaar sound in tort, *see Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, No. 18-CV-05031-EMC, 2019 WL 331161, at *4 (N.D. Cal. Jan. 25, 2019), the Court employs the purposeful direction analysis, also known as the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). *See Axiom Foods*, 874 F.3d at 1069. This test requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks and citation omitted). Analyzing these three requirements, the Court concludes that Krypt has not met its burden of showing purposeful direction and that specific personal jurisdiction is therefore inappropriate.

### A. Intentional Act

The Court turns first to whether Ropaar committed an "intentional act." As the Ninth Circuit has explained, the "intentional act" requirement refers "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (internal quotation marks and citation omitted). Krypt contends that Ropaar committed an

6

"intentional act" by "misappropriating Krypt's trade secrets." Opp. at 7. Ropaar responds that the Complaint fails to actually allege that Ropaar intentionally participated in Robinson's alleged theft of trade secrets. ECF 26 ("Reply") at 4. Instead, says Ropaar, the acts "alleged in the Complaint only implicate Robinson." *Id.* The Court agrees with Ropaar that Krypt has not made a prima facie showing that Ropaar—rather than Robinson alone—misappropriated Krypt's trade secrets.

Krypt maintains that its pleadings and affidavits contain allegations that Ropaar "intentionally stole Krypt's Confidential information (including its trade secrets)." Opp. at 9. To briefly review, the Complaint alleges that, prior to his departure, (1) Robinson deleted his local account from his Krypt laptop, Compl. ¶ 50; (2) Robinson accessed his Ropaar email from his Krypt laptop prior to his departure, *id.* ¶ 51; (3) Robinson accessed and uploaded various Krypt files containing Confidential Information "to non-Krypt cloud accounts at DropBox, OneDrive, and/or to a USB flash drive," *id.* ¶ 52; and (4) Robinson uploaded a copy of his laptop's desktop to some unknown form of storage, *id.* ¶ 54. Krypt says that it uncovered these facts through a forensic examination of Robinson's Krypt-issued computer. *Id.* ¶ 51. As Ropaar points out, though, it was Robinson who allegedly performed all these "actual, physical acts." *See* Reply at 5. Krypt does not allege that Ropaar took any affirmative action to facilitate Robinson's alleged theft, beyond issuing him a Ropaar company email account.

In fact, through one of Jitendra Singh's declarations, Ropaar has submitted testimony that (1) "Clay Robinson never transferred any Krypt files to Ropaar through his e-mail account or by any other direct or indirect means," (2) "Ropaar has not received any of Krypt's confidential information or files from Robinson or anyone else," and (3) "To the extent Krypt's allegations regarding Robinson are true, Ropaar was not even aware that Robinson had copied files before he left Krypt." Second Singh Decl. ¶ 4. Krypt has not brought forth any evidence of its own to contest this evidence from Ropaar. Even the Complaint is devoid of any allegations that Ropaar ever received the Confidential Information at issue. And although Krypt suggests that Ropaar *could* use the Confidential Information to "underbid Krypt's proposals," Opp. at 11, Krypt points to no allegations or evidence that Ropaar has actually done so. Meanwhile, Singh has specifically testified that "Ropaar has never tried to undercut any of Krypt's proposals." Second Singh Decl. ¶

7. All told, the only intentional, physical act that Ropaar itself is alleged to have committed is hiring Robinson and giving him a company email account.

Instead, to establish Ropaar's involvement in the alleged misappropriation, Krypt points to the Complaint's allegation that "Ropaar and Robinson have been acting in concert to design and execute a plan to obtain and misappropriate Krypt's Confidential Information," Compl. ¶ 55, which is reiterated in the declaration submitted by Krypt co-founder Jigish Shah, ECF 24-1 ¶ 21 ("Shah Decl.") ("[I]t is Krypt's belief that Robinson and Krypt worked in concert to misappropriate Krypt's trade secrets."). Krypt does not, however, provide any factual allegations regarding this alleged "plan," leaving the Court to guess at its meaning. To the extent that Krypt merely alleges Ropaar's knowledge of and consent to Robinson's alleged theft, Ropaar has submitted uncontroverted evidence that it was not aware of any such theft. *See* Second Singh Decl. ¶ 5. Besides, the Ninth Circuit has said that "knowledge and consent—passive states of mind—do not constitute intentional acts directed at the forum state." *Chirila v. Conforte*, 47 F. App'x 838, 842 (9th Cir. 2002). Importantly, Krypt does not allege that Ropaar performed any physical acts in furtherance of any plan. The Court therefore construes Krypt's argument to be that Robinson's intentional acts are attributable to Ropaar because the two were co-conspirators and thus "Robinson was acting as an agent of Ropaar at the time of the misappropriation." Opp. at 9.

At the outset, the Court notes that "[t]here is a great deal of doubt surrounding the legitimacy of this conspiracy theory of personal jurisdiction," which has not yet been adopted in this Circuit. *Chirila*, 47 F. App'x at 842. As the Ninth Circuit explained in *Chirila v. Conforte*, the theory "has been criticized by commentators" and the Ninth Circuit has "rejected an analogous theory"—the conspiracy theory of venue. *Id.* at 842-43. The *Chirila* court did not reach a conclusion as to the validity of a conspiracy theory of personal jurisdiction, however, because the allegations of conspiracy were too conclusory.

So too here. The statement that "Ropaar and Robinson have been acting in concert" is, by itself, merely conclusory and therefore not entitled to an assumption of truth. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("Terms like 'conspiracy,' or even 'agreement,' are

8

border-line: they might well be sufficient in conjunction with a more specific allegation—for example, identifying a written agreement or even a basis for inferring a tacit agreement—but a court is not required to accept such terms as a sufficient basis for a complaint.") (internal quotation marks and citation omitted); *Chirila*, 47 F. App'x at 843 ("The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough.") (quoting *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992)). As noted above, Krypt provides no supporting factual allegations as to the formation and operation of the alleged plan between Ropaar and Robinson. For instance, Krypt does not allege when the plan was formed, whether the plan was express or tacit, or who made the decisions on behalf of Ropaar. *Cf. MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1104 (N.D. Cal. 2012) ("Although MedioStream consistently emphasizes that Microsoft 'agrees with' or 'convinces' OEMs to exclude media platform competitors, it does not allege whether such agreements are written, oral or tacit, when they were executed, who made the decisions, or with which OEMs such agreements were made.").

In addition, Krypt's bare allegation that "Ropaar and Robinson have been acting in concert" to steal Krypt's trade secrets is contradicted by the Second Singh Declaration, in which Singh attests that "Ropaar never directed Robinson to misappropriate Krypt's trade secrets." Second Singh Decl. ¶ 2. This evidence negates any presumption of truth to which Krypt's allegation might have been due.

Krypt nevertheless asks the Court to infer the existence of a conspiracy from: (1) the fact that Robinson allegedly committed the relevant actions "after Ropaar had already given Robinson company credentials and access to a Ropaar email address," Opp. at 9; (2) the fact that Robinson terminated his employment with Krypt abruptly and did not tell Krypt he was leaving to work at Ropaar, Shah Decl. ¶ 21; and (3) Ropaar's history of hiring other "high-level" Krypt employees, *id*. Although it is true that "concerted action may be inferred from circumstantial evidence of the defendant's conduct and course of dealings," *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1479 (9th Cir. 1986), it is equally clear that "[c]onspiracies cannot be established by suspicions." *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1139

(E.D. Cal. 2008) (alterations, internal quotation marks, and citation omitted). "There must be evidence of some participation or interest in the commission of the offense." *Id.* Here, Krypt's argument relies upon suspicions rather than reasonable inferences. In the face of Singh's testimony that Ropaar did not direct Robinson to steal the Confidential Information at issue, Krypt presents no allegations or evidence that Ropaar ever received, possessed, or used the Confidential Information. Nor has Krypt alleged that Ropaar has made any competitive moves—such as underbidding Krypt for a client—from which it could be inferred that Ropaar possessed the Confidential Information. These omissions seriously undermine the theory that Robinson stole the Confidential Information on Ropaar's behalf or for Ropaar's benefit.

Meanwhile, the allegations Krypt does make are flimsy. That Robinson did not share his career plans with Krypt is not suggestive of *Ropaar's* participation or interest in the alleged conspiracy. And although Ropaar is alleged to have hired away other Krypt employees, Krypt does not contend that those employees provided Ropaar with trade secrets, or that hiring them was otherwise improper. Essentially, then, Krypt's theory rests on the timing of Robinson's actions, which was after Ropaar hired him. Other district courts have refused to infer a conspiracy or agency relationship from mere timing. For example, the court in *NetApp, Inc. v. Nimble Storage, Inc.* rejected the plaintiff's argument that a conspiracy could be inferred between defendant Nimble and plaintiff's former employee, Reynolds, simply because Reynolds improperly accessed NetApp's protected computers after joining Nimble. No. 5:13-CV-05058-LHKHRL, 2015 WL 400251, at *9 (N.D. Cal. Jan. 29, 2015); *see also Executive Security Management, Inc., v. Dahl*, No. CV 09-9273 CAS (RCX), 2010 WL 11506950, at *4 (C.D. Cal. Feb. 8, 2010) ("The Court finds that the alleged timing of Johnson's and Dahl's subsequent employment with Populous, after their resignation from employment with plaintiffs, is insufficient to reasonably infer that their actions may be imputed to Populous based on theories of an agency relationship or conspiracy."). The Court is likewise unwilling to infer a conspiracy based almost entirely on the timing of Robinson's alleged thievery.

The district court decisions in *Fluke Electronics Corporation v. CorDEX Instruments, Inc.*, No. C12-2082JLR, 2013 WL 566949 (W.D. Wash. Feb. 13, 2013); *Mee Industries, Inc. v.*

10

*Adamson*, No. 218CV003314CASJCX, 2018 WL 6136813 (C.D. Cal. July 27, 2018); and *Calendar Research LLC v. StubHub, Inc.*, No. 2:17-CV-04062-SVW-SS, 2017 WL 10378336 (C.D. Cal. Aug. 16, 2017) that Krypt cites in support of its position only highlight the lack of evidence here. In those cases, as here, an employee of the plaintiff was alleged to have stolen trade secrets and taken them to a different company. But all three cases are distinguished from the present one in at least one key respect: the company defendant was alleged to have received the relevant trade secrets. *See Calendar Research*, 2017 WL 10378336, at *4; *Adamson*, 2018 WL 6136813, at *2; *Fluke Elecs. Corp.*, 2013 WL 566949, at *4. In *Adamson* and *Fluke*, in fact, the complaint contained detailed allegations as to how the company defendant used the trade secrets. *See Adamson*, 2018 WL 6136813, at *2 ("[P]laintiff alleges that Adamson and GoFog have willfully and knowingly used the EES and EES charts in business with current and prospective clients. Plaintiff also alleges that Adamson took the MeeFog Pump Unit designs and used them to develop the fog pump system built and marketed by GoFog."); *Fluke Elecs. Corp.*, 2013 WL 566949, at *4 ("Fluke has alleged that CorDEX is utilizing Fluke's confidential information regarding sales opportunities in the Houston market to interfere with prospective Fluke business" and that CorDex "intentionally and without justification contacted and induced Fluke's existing and potential customers to not contract with Fluke, but with CorDex.") (internal quotation marks and citations omitted).

Krypt's cited cases also involved more direct evidence of the company defendant's involvement in the alleged misappropriation. In *Adamson*, for instance, the defendant company was actually formed by the employee defendant after he allegedly stole the trade secrets; consequently, no inference as to the company's involvement was necessary. *See* 2018 WL 6136813, at *2. Additionally, in *Calendar Research*, StubHub first attempted to purchase the business at which the individual defendants worked, the assets of which were later acquired by plaintiff Calendar Research LLC. 2017 WL 10378336, at *1. It was only after that deal fell through that StubHub hired the individual defendants. *Id.* The court also noted that "[c]onversations between [the individual defendants] and StubHub demonstrate that at the time StubHub acquired the proprietary information of Calendar Research, StubHub knew that [the

11

individual defendants] were no longer authorized to possess or disseminate that information." *Id.* at *4. By contrast, there are no allegations—much less evidence—that Ropaar was even aware Robinson had allegedly obtained Krypt's Confidential Information.

The Court thus finds Krypt's unsupported allegation that Robinson acted as Ropaar's agent to be an "unreasonable inference," which is insufficient to establish a jurisdictional fact on a motion to dismiss, *see In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055.

To be clear, the Court does not dispute that "stealing" Krypt's Confidential Information, *see* Opp. at 9, would constitute an intentional act for the purposes of the purposeful direction analysis. The problem is that Krypt has failed adequately to allege that Ropaar, instead of Robinson alone, had a hand in stealing Krypt's Confidential Information. Consequently, the only intentional act that Ropaar is alleged—and therefore presumed—to have committed is hiring Robinson.

### B. Express Aiming

"The second part of the *Calder*-effects test requires that the defendant's conduct be expressly aimed at the forum." *Brayton Purcell LLP*, 606 F.3d at 1129. Krypt argues that "Ropaar expressly aimed its conduct at California by using Krypt's trade secrets to unlawfully compete with Krypt in California." Opp. at 9. Krypt's argument fails at the starting gate. As just explained, Krypt has not made a prima facie showing that Ropaar "used Krypt's trade secrets" at all—let alone to "compete with Krypt in California." Because Krypt has failed adequately to allege that Ropaar used or otherwise misappropriated Krypt's Confidential Information, the Court does not reach the question of whether that conduct was expressly aimed at California. Moreover, Ropaar has submitted evidence that it has no current customers in California; that none of its employees are residents of California; and that it does not direct any of its marketing in toward the California market or any businesses in California. First Singh Decl. ¶¶ 4-5, 7. This uncontroverted evidence precludes any inference that Ropaar competes with Krypt "in California."

Below, however, the Court grants Plaintiff leave to amend the Complaint. The Court therefore pauses to address Krypt's contention that Ropaar's conduct was expressly aimed at California because it was "targeted at a plaintiff whom Ropaar knew to be a resident of

California." Opp. at 9. Krypt's argument is based on the faulty premise that express aiming is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (cited at Opp. 9). The Ninth Circuit cases that recited this proposition are no longer good law. Following the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), the Ninth Circuit held that "mere satisfaction of the test outlined in *Washington Shoe*, without more, is insufficient to comply with due process." *Axiom Foods*, 874 F.3d at 1070. In *Walden*, the Supreme Court considered whether a federal court in Nevada could exercise personal jurisdiction over DEA agents who seized cash from two Nevada residents at an airport in Georgia. 571 U.S. at 280-81. "[T]he Supreme Court rejected [the Ninth Circuit's] conclusion that the defendants' knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts." *Axiom Foods*, 874 F.3d at 1069–70 (internal quotation marks and citation omitted). As the Supreme Court explained, the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. As a result, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286; *see also id.* at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). Should Krypt choose to amend its Complaint, it must take heed of these principles from *Walden* and its progeny.

Finally, the Court considers whether the lone intentional act Ropaar is alleged to have committed—hiring Robinson—meets the express aiming requirement. Krypt, having focused on its theory that Ropaar misappropriated Krypt's trade secrets, does not brief this issue. In any event, the Court rejects on the merits the possibility that Ropaar's hiring of Robinson is a sufficient basis for personal jurisdiction.

"The proper question" under the expressly-aimed prong of the *Calder*-effects test is "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. In particular, as alluded to above, the connection "must arise out of contacts that the defendant *himself* creates with the forum State" and not the contacts of a third party with whom

13

the defendant is associated. *Id.* at 284 (emphasis in original). Again, Ropaar is headquartered in Texas and has attested that it does not conduct or seek to conduct business in California. Robinson is and was a resident of Arkansas during the entire period of his employment with Krypt. In other words, then, a Texas company with no business presence in California (Ropaar) hired an Arkansas resident (Robinson). The mere fact that Robinson worked for a California-based company and occasionally "provided services in California," Compl. ¶ 41, before joining Ropaar is insufficient to connect Ropaar to California in a meaningful way. Robinson's prior work for Krypt in California is precisely the kind of "random, fortuitous, or attenuated" contact that a defendant "makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286. Under clear Supreme Court precedent, such a contact does not suffice to support personal jurisdiction over Ropaar in California. *Id.; see also id.* at 291 (summarily rejecting allegation that "some of the cash seized [from respondents] in Georgia 'originated' in Nevada" because "that attenuated connection was not created by petitioner, and the cash was in Georgia, not Nevada, when petitioner seized it").

Thus, the Court finds that Krypt has failed to meet its burden of showing that Ropaar committed an intentional act that was expressly aimed at California. Because that failure is dispositive, the Court need not reach the third prong of the *Calder*-effects test. Ropaar's motion to dismiss the two claims against it for lack of personal jurisdiction is, therefore, GRANTED.

### C. Leave to Amend

The Court must now decide whether leave to amend is warranted. Leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors). Ropaar opposes leave to amend on the ground that amendment would be futile. *See* Mot. at 6. However, the Court cannot agree that "there is simply no argument personal jurisdiction can exist under any theory." *Id.* Krypt is at least entitled to an opportunity to bolster its theory that Ropaar worked "in concert" with Robinson or otherwise engaged in the alleged

14

misappropriation. *See* Opp. at 16. Considering Federal Rule of Civil Procedure 15's "policy of favoring amendments to pleadings" and the "extreme liberality" with which it is applied in this Circuit, *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981), the Court grants leave to amend.

## IV. ORDER

For the foregoing reasons, Ropaar's motion to dismiss is GRANTED WITH LEAVE TO AMEND. Any amended complaint is due by February 7, 2020. Krypt is directed to file a redlined complaint as an attachment to its amended complaint. Leave to amend is restricted to the defects discussed in this Order and in Ropaar's motion; Krypt may not add new parties or claims without obtaining prior express leave of the Court. The Court is mindful, however, that Defendant Robinson has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF 28. In the event the Court grants that motion with leave to amend, Krypt may request a continuance of the deadline to file its amended complaint.

Dated: January 2, 2020

_____
BETH LABSON FREEMAN
United States District Judge