UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KRYPT, INC., <br><br>           Plaintiff, <br><br>     v. <br><br> ROPAAR LLC, et al., <br><br>           Defendants. | Case No. 19-cv-03226-BLF <br><br> **ORDER DENYING DEFENDANT ROPAAR, LLC'S MOTION TO DISMISS** <br><br> [Re: ECF 60] |

Krypt, Inc. ("Krypt") brings this suit against its former employee Clay Robinson ("Robinson") and Ropaar LLC ("Ropaar") in connection with Robinson's decision to leave Krypt's employ and join Ropaar. Ropaar now moves to dismiss the claims against it under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. The Court heard oral arguments on May 21, 2020. For the reasons discussed below, Ropaar's motion to dismiss is DENIED.

**I.     BACKGROUND**

Unless otherwise noted, the following factual allegations are drawn from the First Amended Complaint, ECF 55 ("FAC").

Plaintiff Krypt is a California corporation with its principal place of business in San Jose, California. FAC ¶ 14. Krypt was established in 2008 as a "business and systems consulting firm, which provides System Applications Products ('SAP') solutions for small and large corporations." *Id.* ¶ 17. Specifically, Krypt provides "consulting services, pre-developed products, and specialized methodologies" for its customers. *Id.*

Defendant Ropaar is a Texas limited liability corporation with its principal place of business in Farmers Branch, Texas. FAC ¶ 15. According to Krypt, Ropaar "also provides SAP solutions

for corporations" and is "in direct competition with Krypt." *Id.* ¶¶ 3, 20. Defendant Robinson worked at Krypt from May 1, 2016 to February 12, 2019. *Id.* ¶ 35. Robinson started working at Ropaar on February 18, 2019. *Id.* ¶ 53. Although Krypt is headquartered in California and Ropaar is headquartered in Texas, Robinson was a resident of Washington County, Arkansas "at all times relevant to the First Amended Complaint." *Id.* ¶ 16.

While at Krypt, Robinson worked as a Professional Services Consultant. FAC ¶ 35. As a result, Robinson was allegedly "entrusted with access to all of Krypt's Confidential Information, including but not limited to information about Krypt's strategy and expansion plans; customer lists concerning clients and prospective clients, including key contact information; complex customer requirements and solutions; client preferences; past services rendered to the client; detailed fee structures; confidential proposals; and pipeline information.." *Id.* ¶ 41. On January 29, 2019, Robinson resigned from Krypt, explaining that "a member of his family had health problems that limited Robinson's ability to travel." *Id.* ¶ 47. Robinson also told Krypt that he "was leaving the SAP industry entirely and would begin working for Smithfield Foods, a meat-packing company." *Id.*

Robinson's last day at Krypt was February 12, 2019. FAC ¶ 48. On his last day, Robinson signed Krypt's standard Termination Certification (ECF 55-3), confirming that he had returned all of Krypt's equipment and information and that he would not use any of Krypt's confidential information to solicit Krypt's clients for the benefit of Krypt's competitors. *Id.* ¶¶ 48-49. Because Robinson left Krypt on "amicable terms," Krypt allowed Robinson to maintain possession of his Krypt-issued laptop, because Robinson told Krypt management that keeping the laptop "would enable him to help out with any transition matters that might arise following his departure." *Id.* ¶ 51. Robinson returned this laptop to Krypt on March 19, 2019. *Id.*

On April 4, 2019, however, Krypt learned that Robinson had not left Krypt to join Smithfield Foods but had instead began working for Ropaar. FAC ¶ 52. Following that revelation, Krypt conducted a forensic examination of Robinson's Krypt-issued laptop. *Id.* ¶ 54. At the outset, Krypt discovered that the laptop recently had been formatted, such that Robinson's local account on the computer had been deleted. *Id.* ¶ 55. Krypt subsequently hired a third-party forensic computer

specialist to conduct computer forensics analysis, and was able to recover much of the deleted data. *Id.* ¶ 56. Based on the forensic examination, coupled with Robinson's discovery responses in this action, Krypt alleged the following:

Two months before his last day at Krypt, in early December 2018, Robinson exchanged emails with Ropaar's CEO, Jitendra Singh ("Mr. Singh"), to discuss Robinson's hiring at Ropaar. FAC ¶ 57(a)(i). On multiple occasions from early December, 2018 through early February, 2019, Robinson emailed Krypt materials (documents and internal correspondence) from his @krypt work email account, to his personal @gmail account. *Id.* ¶ 57(a)(i).

On January 30, 2019, two weeks before his last day at Krypt, Mr. Singh sent an email to Robinson's @gmail account, asking Robinson to set up his Ropaar email, including a Business Skype account and Office 365 email account, and providing an initial password to do so. FAC ¶ 57(b)(i).

One week before his last day at Krypt, Robinson: (1) used his Krypt-issued laptop to log into and access his Ropaar e-mail; (2) exchanged emails with a potential client and Ropaar, signing his emails as "Clay Robinson, Solution Architect – Ropaar"; and (3) accessed a number of Krypt's confidential files and uploaded those files to non-Krypt cloud accounts at DropBox, OneDrive, and/or to a USB flash. FAC ¶ 57(c).

On his second day of employment at Ropaar, Robinson accessed and saved certain Krypt confidential information on a cloud-based account. FAC ¶ 57(d). And on March 21, 2019, just before Robinson returned the Krypt-issued laptop, Robinson reset the laptop and deleted all files saved on the laptop. FAC ¶ 57(e).

Meanwhile, Krypt believed that Ropaar had "launched a campaign to poach Krypt's employees . . . after they had been trained by Krypt and given access to Krypt's invaluable Confidential Information." FAC ¶ 31. For example, Ropaar purportedly made an employment offer to Rajesh Malle in May 2015, which Malle ultimately accepted. *Id.* ¶ 32. Krypt alleges that at least four of Ropaar's seven employees were recruited directly from Krypt. *Id.* ¶ 33.

Based on the forensic examination of Robinson's computer and Krypt's belief that Ropaar has been systematically poaching Krypt employees, Krypt now alleges that "Ropaar acted in concert

with Robinson to design and execute a plan to misappropriate Krypt's trade secrets, in order to unfairly compete with Krypt and steal Krypt's existing and potential clients and projects." FAC ¶ 69. Accordingly, on June 7, 2019, Krypt filed a complaint against Robinson and Ropaar. *See* ECF 1. On January 2, 2020, the Court granted Ropaar's first motion to dismiss challenging the Court's personal jurisdiction over Ropaar and gave leave to amend. Prior Order, ECF 40. The Court found that Krypt had not met its burden of showing "purposeful direction" to California. *Id*. at 6.

On February 14, 2020, Krypt filed a First Amended Complaint. FAC. The FAC contains three claims: (1) a claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*. ("DTSA"), against both Defendants; (2) a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq*. "CUTSA"), against both Defendants; and (3) a common law breach of contract claim against Robinson. *Id*. ¶¶ 76-108. The breach of contract claim—which is not at issue in the instant motion—is based upon Robinson's alleged breach of two agreements he signed upon accepting the position at Krypt: an offer letter (the "Offer Letter") and a Confidential Information and Invention Assignment Agreement (the "CIIAA"). *See id*. ¶¶ 36, 97-108.

Ropaar now moves to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(2), again challenging the exercise of personal jurisdiction over defendant Ropaar. Motion at 1, ECF 60. Ropaar also moves to dismiss under Rule 12(b)(6) for failure to state a claim for which relief can be granted arguing that Krypt's allegations fail to allege that Ropaar received any trade secrets. *Id.*

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (RULE 12(B)(2))

Defendant Ropaar moves to dismiss the two claims against it for lack of personal jurisdiction. *See* Motion at 1. In opposition to Ropaar's motion, Plaintiff Krypt argues that it has alleged sufficient facts to establish personal jurisdiction under three theories: (1) ***conspiracy*** – because Ropaar and Robinson allegedly conspired to misappropriate Krypt's trade secrets; (2) ***vicarious liability (respondeat superior)*** – because Robinson is alleged to have stolen Krypt's confidential information while he was employed by Ropaar; and (3) ***purposeful direction*** – because

1   Ropaar used Krypt's trade secrets to lure away Krypt's clients and projects. *See generally* ECF 65 ("Opp'n").

As an initial matter, the Court notes that Krypt's theory of personal jurisdiction based on allegations of conspiracy is meritless. Krypt cites to a Ninth Circuit case from 1946 for the proposition that personal jurisdiction can be imputed to alleged co-conspirators. *See* Opp'n at 10 (citing *Giusti v. Pyrotechnic Indus.*, 156 F.2d 351, 351 (9th Cir. 1946)). In doing so, Krypt ignores the Court's Prior Order specifically citing to a much more recent Ninth Circuit decision pointing out that the conspiracy theory of personal jurisdiction has ***not*** been adopted in this Circuit. *See* Prior Order at 8 (citing *Chirila v. Conforte*, 47 F. App'x 838, 842 (9th Cir. 2002)); *see also See Brown v. 140 NM LLC*, No. 17-CV-05782-JSW, 2019 WL 118425, at *5 (N.D. Cal. Jan. 7, 2019) (declining to adopt a conspiracy jurisdiction theory "[i]n the absence of clear Ninth Circuit authority"); *Wescott v. Reisner*, No. 17-CV-06271-EMC, 2018 WL 2463614, at *4 (N.D. Cal. June 1, 2018)(same).

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). Courts may consider evidence presented in affidavits and declarations in determining personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted).

"Uncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). If, however, the defendant adduces evidence controverting the allegations, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction," *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986), for a court "may not assume the

truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Moreover, conclusory allegations or "formulaic recitation of the elements" of a claim are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "Nor is the court required to accept as true allegations that are . . . unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Freestream Aircraft*, 905 F.3d at 602. "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Cal. Civ. Proc. Code Ann. § 410.10). Constitutional due process, in turn, requires that a defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Freestream Aircraft*, 905 F.3d at 602 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068 (citing *Daimler AG*, 571 U.S. at 127). General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (internal quotation marks omitted). Where a defendant is subject to general jurisdiction, it may be sued "on any and all claims," *id.* at 137, including claims "arising from dealings entirely distinct" from its forum-related activities, *id.* at 127 (internal quotation marks omitted). By contrast, specific jurisdiction is proper when the defendant's contacts with the forum state may be more limited but the plaintiff's claims "arise out of or relate to" those contacts. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1786 (2017). Krypt has not alleged that Ropaar is subject to general jurisdiction in California. Thus, the Court's analysis is limited to allegations of specific jurisdiction.

The Ninth Circuit has set forth a three-prong test for the exercise of specific jurisdiction:

(1) the defendant must either "purposefully direct his activities"

> toward the forum or "purposefully avail himself of the privileges of conducting activities in the forum";
> (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and
> (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### B. Discussion

Krypt alleges that Robinson stole Krypt's Confidential Information "while he was employed by Ropaar, and for the purpose of enabling Ropaar to compete more effectively with Krypt." Opp'n at 11. For that reason and "[u]nder well-settled agency law," Krypt argues that "Ropaar is vicariously liable for Robinson's conduct." *Id.*

"Under the doctrine of respondeat superior, an innocent employer may be liable for the torts its employee commits while acting within the scope of the employment." *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 473–74 (2003). "For purposes of personal jurisdiction, the actions of the agent are attributable to the principal." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.1990). In other words, on a vicarious liability theory, "minimum contacts of nonresident employer's agent are normally imputed to the employer." *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, No. C 12-04634 SI, 2012 WL 5471143, at *8 (N.D. Cal. Nov. 9, 2012) (citing *College Source*, 653 F.3d at 1078).

Thus, if an agency relationship between Robinson and Ropaar is sufficiently pled, Robinson's actions in the alleged misappropriation of Krypt's trade secrets would be imputed to Ropaar.

#### 1. Agency Relationship

The Court is satisfied that the FAC's allegations reasonably lead to an inference that that Robinson was acting within the scope of his employment for Ropaar at the time he allegedly

7

1   misappropriated Krypt's confidential documents. "[T]he determining factor in ascertaining whether
2   an employee's act falls within the scope of his employment for respondeat superior liability is not
3   whether the act was authorized by the employer, benefited the employer, or was performed
4   specifically for the purpose of fulfilling the employee's job responsibilities." *Yamaguchi*, 106 Cal.
5   App. 4th at 481.  Rather, an employer may be "vicariously liable for the employee's tort—even if
6   it was malicious, willful, or criminal—if the employee's act was an outgrowth of his employment,
7   inherent in the working environment, typical of or broadly incidental to the employer's business, or,
8   in a general way, foreseeable from his duties." *Id.* at 482 (citation and marks omitted).

Krypt alleges the following facts relevant to Robinson's employment with Ropaar in relation to the alleged misappropriation of Krypt's confidential documents:

(1) Approximately two months before his last day at Krypt (February 18, 2019), Robinson allegedly exchanged emails with Ropaar's CEO to discuss Robinson's hiring at Ropaar. FAC ¶ 57(a)(i).

(2) On multiple occasions from early December 2018 through early February 2019, Robinson emailed Krypt materials (documents and internal correspondence) from his @krypt work email account, to his personal @gmail account. FAC ¶ 57(a)(i).

(3) On January 30, 2019, two weeks before his last day at Krypt, Mr. Singh of Ropaar sent an email to Robinson's @gmail account, asking Robinson to set up his Ropaar email, including a Business Skype account and Office 365 email account, and providing an initial password to do so. FAC ¶ 57(b)(i).

(4) One week before his last day at Krypt, Robinson: (a) used his Krypt-issued laptop to log into and access his Ropaar e-mail; (b) exchanged emails with a potential client and Ropaar, signing his emails as "Clay Robinson, Solution Architect – Ropaar"; and (c) accessed a number of Krypt's confidential files and uploaded those files to non-Krypt cloud accounts at DropBox, OneDrive, and/or to a USB flash. FAC ¶ 57(c).

(5) On his second day of employment at Ropaar – and while still in possession of his Krypt-issued laptop – Robinson accessed and saved certain Krypt confidential information on a cloud-based account. FAC ¶ 57(d).

These allegations are sufficient to establish a plausible agency relationship between Robinson and Ropaar during the relevant time period.

Now that the Court has determined FAC has sufficiently alleged an agency relationship between Robinson and Ropaar, the Court must examine whether Robinson's conduct – imputed to Ropaar – establishes specific jurisdiction.

### 2. Purposeful Direction Based on Robinson's Conduct

Ropaar does not dispute that well-pled allegations of vicarious liability are basis for personal jurisdiction. Instead, Ropaar argues that "the acts of Robinson that Krypt seeks to have imputed to Ropaar were not directed at California." Reply at 4, ECF 62. The Court disagrees.

With respect to the first prong of the specific jurisdiction test, the Ninth Circuit has said that "purposeful availment" and "purposeful direction" are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802 (acknowledging that the Ninth Circuit has sometimes "use[d] the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction"). Because the trade secret misappropriation claims against Ropaar sound in tort, *see Hong Kong uCloudlink Network Tech. Ltd. v. SIMO Holdings Inc.*, No. 18-CV-05031-EMC, 2019 WL 331161, at *4 (N.D. Cal. Jan. 25, 2019), the Court employs the purposeful direction analysis, also known as the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). *See Axiom Foods*, 874 F.3d at 1069. This test requires that the defendant have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks and citation omitted). Analyzing these three requirements, the Court concludes that Krypt has met its burden of showing purposeful direction.

First, Robinson committed an intentional act. As the Ninth Circuit has explained, the "intentional act" requirement refers "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (internal quotation marks and citation omitted). Robinson allegedly "accessed a number of files containing Krypt's Confidential Information, downloaded copies of these files to his laptop's desktop, and then uploaded these files to non-Krypt cloud accounts at DropBox, OneDrive, and/or to a USB flash drive." FAC ¶ 57(c)(iii).

1    These were all physical acts with real-life consequences and thus were "intentional."

2    Second, Robinson aimed his conduct at California. While Robinson was physically located in Arkansas, "physical presence within the territorial jurisdiction of the court is not required[.]" *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "The proper question" under the expressly-aimed prong of the *Calder*-effects test is "whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290. Robinson allegedly accessed Krypt's "California-based computer network and downloaded confidential and proprietary information to several storage devices" to compete with Krypt. *Mee Indus., Inc. v. Adamson*, 2018 WL 6136813, at *4 (C.D. Cal. July 27, 2018); *see* FAC ¶ 11; Shah Decl. ¶ 2 ("Krypt stores and maintains its Confidential Information, including its trade secrets, on computers and computer networks that are based in California."), ECF 61-1. These allegations are sufficient to establish that Robinson purposefully aimed his conduct at California in a meaningful way by accessing his then-employer's California-based computer network and downloading Krypt's confidential information.

Finally, Robinson must have known that the harm caused would likely be suffered in California. Robinson was employed by the California-based Krypt for nearly three years. FAC ¶ 35. Krypt's principal place of business is in San Jose, California. *Id. ¶ 14.* Krypt alleges that it suffered economic damage as a result of Robinson's willful misappropriation. *Id.* ¶ 85. The Ninth Circuit has "repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business." *CollegeSource*, 653 F.3d at 1079. As such, Krypt has sufficiently established that Robinson knew that the harm caused by his alleged trade secret misappropriation likely would be felt in California.

In sum, the Court finds that Robinson committed intentional acts, expressly aimed at California, causing harm to Krypt in California. And because under the vicarious liability theory, Robinson's actions are imputed on Ropaar, Krypt has met its burden of showing purposeful direction as to Ropaar.

### 3. Forum-Related Contact

Next, Krypt must show that this lawsuit arises out of or relates to Robinson's alleged trade secret misappropriation. The Ninth Circuit relies on "a 'but for' test to determine whether a

particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). "Under the 'but for' test, 'a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action.'" *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) (citation omitted).

Here, Krypt's suit arises directly from Robinson's alleged downloading and copying of Krypt's confidential information. FAC ¶ 83. "But for" Robinson's actions to misappropriate Krypt's trade secrets, Krypt would not have suffered economic damage. Accordingly, through its misappropriation claim, Krypt has satisfied the second prong of specific jurisdiction as to Robinson. And because Robinson's actions are imputed to Ropaar under the vicarious liability theory, the second prong is also satisfied as to Ropaar.

### 4. Reasonableness

Because Krypt has satisfied the first two prongs, Ropaar bears the burden of "present[ing] a compelling case" that the exercise of jurisdiction is not reasonable. *Schwarzenegger*, 374 F.3d at 802. In determining whether the exercise of jurisdiction comports with "fair play and substantial justice" and is therefore reasonable, the Court must consider seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

First, with respect to the degree of "purposeful injection" into the forum state's affairs, "[e]ven if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). Ropaar argues that this factor weighs against finding jurisdiction because the allegations are "attenuated and superficial." Motion at 7-8. The Court disagrees. This factor weighs

in favor of exercising jurisdiction because of the nature of Robinson's alleged wrongful conduct – imputed on Ropaar under the vicarious liability theory – targeted at a California company. Robinson allegedly downloaded a California Company's confidential documents from a California-based computer network. *See* FAC ¶ 11; Shah Decl. ¶ 2. The Court finds that these actions were a significant "interjection" into California's affairs. *See Enertrode, Inc. v. Gen. Capacitor Co. Ltd*, No. 16-CV-02458-HSG, 2016 WL 7475611, at *5 (N.D. Cal. Dec. 29, 2016) (finding that purposeful interjection factor weighed in favor of exercising jurisdiction where defendant allegedly downloaded and copied plaintiff's trade secret knowing that their misappropriation would likely harm a California plaintiff). Thus, the first factors favors Krypt.

Second, Ropaar argues that it is a small Texas company, with its witnesses in Texas – making a California litigation burdensome. However, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007). Although the inconvenience does not appear to be severely burdensome, this factor weighs slightly in favor of Ropaar.

The third and fourth factors are neutral because state sovereignty is not at issue in this case and California, Texas, and Arkansas have equal interest in protecting the rights of their residents in this the dispute.

The fifth factor focuses on "where the witnesses and evidence are likely to be located." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995). However, this factor "is no longer weighed heavily given the modern advances in communication and transportation." *Panavision Int'l*, 141 F.3d at 1323. Ropaar argues that the most efficient judicial resolution of the controversy would be in Texas or Arkansas," where Robinson and Ropaar's witnesses reside. Motion at 8. On the other hand, Krypt is a California corporation. The Court finds that this factor weighs in favor of Ropaar, but only slightly.

Courts in this circuit have cast doubt on the importance of a plaintiff's convenience in weighing the reasonableness of a forum. *See Dole Food*, 303 F.3d at 1116; *Caruth*, 59 F.3d at 129. Thus, the sixth factor does not significantly influence the Court's analysis.

Finally, the seventh factor looks at the availability of an alternate forum. Ropaar argues that "Krypt could have brought this case in Texas or Arkansas." Motion at 8. Krypt responds that "there is *no forum other than California* where Krypt can achieve full relief as to both defendants" because "Robinson is not subject to personal jurisdiction in Ropaar's home of Texas, and Ropaar is not subject to personal jurisdiction in Robinson's home of Arkansas[.]" Opp'n at 22. The Court agrees with Krypt. If Ropaar is dismissed from this case, Krypt would be required to litigate a separate and largely duplicative action in Texas against Ropaar, while this case continues against Robinson. Thus, this factors weighs in favor of Krypt.

Courts in the Ninth Circuit, "emphasize the heavy burden on both domestic and foreign defendants in proving a 'compelling case' of unreasonableness to defeat jurisdiction." *Dole Foods*, 303 F.3d at 1117. Here, only two of the seven reasonableness factors weigh slightly in Ropaar's favor. Consequently, the Court finds that Ropaar have not carried its "heavy burden" of proving the unreasonableness of the Court's exercise of jurisdiction.

### C. Conclusion

The Court finds that Krypt has met its burden and established the Court's personal jurisdiction as to Ropaar under the vicarious liability theory, based on Robinson's alleged actions. Accordingly, The Court DENIES Ropaar's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (RULE 12(B)(6))

### A. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*

13

1  *Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**B. Analysis**

Ropaar dedicates less than one page to its motion to dismiss for failure to state a claim under Rule 12(b)(6). *See* Motion at 9. Ropaar's sole argument on this issue is that Krypt "has not properly alleged that Ropaar ever acquired any of its trade secrets," and therefore cannot make out a claim for misappropriation of those trade secrets. *Id.* Krypt labels Ropaar's 12(b)(6) as "frivolous" responds that it has sufficiently alleged Ropaar's violations of DTSA and CUTSA. Opp'n at 23-24 (citing FAC ¶¶ 59-96).

The Court agrees with Krypt. Krypt has alleged that Ropaar conspired with Robinson to misappropriate Krypt's trade secrets. *See* FAC ¶¶ 69-74. The FAC lays out facts – based on forensic analysis of Robinson's Krypt-issued laptop and discovery responses – to allege that prior to leaving Krypt, Robinson performed work on behalf of Ropaar and saved certain Krypt confidential documents to personal cloud-based accounts and USB drives. *See id.* ¶ 57. Accordingly, Krypt has alleged sufficient facts that if true, would lead to a plausible claim for trade secret misappropriation against Ropaar.

In its reply, Ropaar argues that Krypt's factual allegations are "refuted by declaration" of Ropaar employees. Reply at 5. But in deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). Outside of the FAC, the Court may only consider materials that are subject to judicial notice and "not subject to reasonable dispute." *See* Fed. R. Evid. 201(b). Courts have taken judicial notice of documents on which complaints necessarily rely, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), publicly available financial documents such as SEC filings, *Metzler Inv. GMBH v. Corinthian*

14

*Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008), and publicly available articles or other news releases of which the market was aware, *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999). Ropaar's declarations are not subject to judicial notice and the Court may not consider them in connection with Ropaar's 12(b)(6) motion. Ropaar's cited authority is inapposite because those cases discuss the standard for a challenge to the Court's *personal jurisdiction*, where, unlike a motion under Rule 12(b)(6), affidavits are permitted. *See* Reply at 5 (citing *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

### C. Conclusion

The Court DENIES Ropaar's motion to dismiss under Federal Rule of Civil procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## IV. ORDER

For the foregoing reasons, Ropaar's Motion to Dismiss is DENIED. Ropaar shall file its answer within 21 days of this Order. This Order terminates ECF 60.

**IT IS SO ORDERED.**

Dated: July 6, 2020

BETH LABSON FREEMAN
United States District Judge